Filed 8/5/25  Save Petaluma v. City of Petaluma CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SAVE PETALUMA,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CITY OF PETALUMA,<br><br>     Defendant and Appellant.<br><br>SAFEWAY INC.,<br><br>Real Party in Interest and Appellant. | A169925<br><br>(Sonoma County<br>Super. Ct. No. SCV-264378) |

The City of Petaluma (the City) and Safeway Inc. (Safeway) appeal from orders awarding costs (Code Civ. Proc.,[1] § 1032) and private attorney general fees (§ 1021.5) to a local citizens group, Save Petaluma, that sued them.  The suit challenged the City's approval of Safeway's proposal to build a 16-pump gas station without requiring preparation of an environmental impact report (EIR) under the California Environmental Quality Act, Public Resources Code section 21000, et seq. (CEQA).

The City and Safeway challenge the rulings on virtually every ground on which they opposed an award of costs and fees below.  But they fail to

---

[1]  Except as otherwise indicated, all further statutory references are to the Code of Civil Procedure.

1

grapple with the trial court's findings, Save Petaluma's arguments and authorities or the standard of review, and ultimately do not show the trial court abused its discretion. We therefore affirm.

## BACKGROUND

In May 2019, a citizens group called Save Petaluma comprised of residents of the City, sued the City and Safeway, challenging the City's approval of a 16-pump gas station Safeway sought to build in close proximity to two daycare centers, an elementary school and homes. The complaint alleged all of the following: The project would dispense approximately 8.5 million gallons of gasoline and diesel fuels per year and posed significant health risks to nearby residents, children and teachers as well as other environmental impacts. Despite these "disturbing health risk implications" and other environmental impacts, the City ultimately approved the project without an EIR, although CEQA required one in these circumstances. The city council had initially voted unanimously to require an EIR for the project but reversed its vote in closed session after Safeway carried out a "campaign of intimidation," threatening that if the City did not change course Safeway would immediately file suit, fast track discovery and depositions and subject the City to " 'tens of millions of dollars of damage.' " "[A]bsent enforcement by [Save Petaluma], Safeway [would] proceed with a project that [would] cause significant, unmitigated human health and environmental impacts that might otherwise have been reduced or avoided through legally adequate environmental review and the adoption of feasible mitigation measures."

Save Petaluma asserted two causes of action. The first claimed a violation of CEQA because the City failed to prepare an EIR despite the project's potential impacts on air emissions, human health, transportation, traffic safety and hazardous materials and instead issued a mitigated

2

negative declaration.  Second, Save Petaluma sought a writ of administrative mandate under section 1094.5, alleging the City failed to conduct a fair hearing and abused its discretion in approving the project because the city council members improperly based their decision on Safeway's threats of litigation rather than on the record.

Save Petaluma sought a writ requiring the City to vacate and set aside all project approvals, to comply with CEQA by preparing legally adequate environmental documents, in the meantime to refrain from issuing any further permits for the project and to hold a new public hearing free from undue influence and errors of law.  It also prayed for a stay and provisional and/or permanent injunction barring the City and Safeway from proceeding with any activity on the project pending the litigation and compliance with CEQA.  Safeway's counsel promptly informed Save Petaluma it would represent both the City and Safeway in the case.

As described by the trial court, there was "extensive litigation in the early stages of the case in 2019 and 2020," including both a special motion to strike the complaint and a demurrer challenging the lawsuit on numerous substantive grounds.  In October 2019, the court rejected both in an order that also granted Save Petaluma's motion for an administrative stay and a preliminary injunction halting activities on the project to preserve the status quo.  After that, the City and Safeway suffered additional litigation setbacks. They filed a writ petition challenging the court's decision on all three matters, which we summarily denied.  Save Petaluma sought and was granted leave to conduct discovery and then partially succeeded on a motion to compel further discovery responses.

On April 1, 2021, the City's approval for the project expired.  A few weeks later, the City and Safeway notified Save Petaluma the approval had

expired and that "Safeway will no longer be pursuing the gas station project." They advised that the case was therefore moot and requested a stipulated dismissal with prejudice. The parties conferred but were unable to reach a stipulation because they disagreed as to whether Save Petaluma was the prevailing party.

At a subsequent case management conference, the City and Safeway advised the court that the approval had expired and the case was moot. Two years later, in July 2023, Save Petaluma filed a request for voluntary dismissal and the action was dismissed. Next, both sides sought to recover their costs as a prevailing party under section 1032 and filed competing motions to strike or tax the other side's costs. Save Petaluma also filed a motion to recover its attorney fees under section 1021.5, the private attorney general statute.

The trial court found that Save Petaluma was the prevailing party for costs purposes. On that basis, it granted Save Petaluma's motion to strike or tax the City's and Safeway's costs and denied their competing motion to strike Save Petaluma's costs, awarding Save Petaluma $7,670.55 in costs. The court also found that Save Petaluma was the prevailing party for attorney fee purposes under section 1021.5. Applying a 1.5x multiplier to a portion of Save Petaluma's lodestar figure, it awarded Save Petaluma $613,893.75 in fees. The City and Safeway (collectively, appellants) timely appealed from the cost and fee orders.

## DISCUSSION

### I.

### *The Cost Award*

Under section 1032, a prevailing party is entitled as a matter of right to recover costs. (§ 1032, subd. (b).) The statute states that *"unless the context*

4

*clearly requires otherwise*," the phrase " '[p]revailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (*Id.*, subd. (a)(4), italics added.)

Generally, a trial court's determination that a litigant is a prevailing party under section 1032, along with its award of fees and costs, is reviewed for abuse of discretion.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)  But where the issue involves the interpretation of a statute, the issue presents a question of law that we review de novo.  (*Ibid.*)

In challenging the cost award, appellants' principal argument is that they were the parties "in whose favor a dismissal [was] entered" (§ 1032, subd. (a)(4)) (hereafter § 1032(a)(4)) and as such were the prevailing parties under section 1032.  As a consequence, they assert, (i) *they* were entitled to their costs as a matter of right, and (ii) the trial court had no discretion to decide *Save Petaluma* was the prevailing party and award *it* its costs, because this was not a "situation[] other than as specified" for purposes of section 1032(a)(4).  (*Ibid.*)[2]  Save Petaluma does not dispute those

_____

[2]  The City and Safeway assert only that they were entitled to costs as of right because of the dismissal.  They have thus abandoned any argument that they were entitled to an award of costs on any other ground.  (See *Meeks*

consequences *if* the City and Safeway meet the definition of a prevailing party. The question here is whether they do.

We start with the presumption the trial court did not err, and it is incumbent on appellants to affirmatively demonstrate otherwise. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) As we will explain, appellants do not persuade us the dismissal alone categorically established they are the prevailing parties for cost purposes. Nor do they convince us that the trial court erred or abused its discretion in awarding costs to Save Petaluma.

In their opening brief, appellants cite two cases on this point. Although both contain broad language about a defendant in whose favor a dismissal is entered being a prevailing party entitled to recover costs as a matter of right (see *Brown v. Desert Christian Center* (2011) 193 Cal.App.4th 733, 738 (*Brown*); *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 138-139, 164 (*Hambrick*) [affirming award of costs to defendants after dismissal on ground of judicial abstention, following *Brown*]), neither addresses a situation in which the plaintiff succeeded during the litigation, preliminarily or finally, and as a result obtained significant relief. In *Brown*, the plaintiff's personal injury action against his employer was dismissed after a hearing at which the court found his injuries were sustained in the course of his employment and were subject to the exclusive remedy of workers' compensation, as a result of which the court lacked subject matter jurisdiction. (*Brown*, at pp. 736-737.) Similarly, Hambrick's claims challenging the conduct of three health service plans were

<hr>

*v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 878 [" 'Issues not raised in an appellant's brief are deemed waived or abandoned' "].)

6

dismissed after the court sustained defendants' demurrers based on judicial abstention. (*Hambrick*, at pp. 132, 138.)

Basically, appellants fail to grapple with Save Petaluma's argument, or the cases it cites for the proposition that where a plaintiff achieves its primary litigation goal by means of litigation, eventual dismissal of the case does not necessarily bring the defendant within the definition of prevailing party under section 1032(a)(4). In particular, they all but ignore the language in section 1032 stating that the enumerated categories of prevailing parties (including "a defendant in whose favor a dismissal is entered") are prevailing parties "*unless the context clearly requires otherwise.*" (§ 1032, subd. (a), italics added.) Neither *Brown* nor *Hambrick* discusses this language, but other cases, including some cited by Save Petaluma, do.

In *Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786 (*Molski*), which Save Petaluma cites, the court stated, "[S]ection 1032, subdivision (a)(4) provides that the defendant is the prevailing party if dismissal is entered in its favor or if the plaintiff does not recover any relief against it, *unless the context clearly requires otherwise.* A plaintiff may 'prevail' for purposes of [Civil Code] section 55 [California Disabled Persons Act] if the lawsuit was the catalyst motivating the defendant to modify its behavior or the plaintiff achieved the primary relief sought." (*Id*. at p. 790, italics added, citing *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 185 (*Donald*).)

In *Donald*, Division Three of our court reversed a trial court's determination that the defendant restaurant was the prevailing party entitled to attorney fees on the injunctive relief claim because the plaintiff's request for injunctive relief compelling the restaurant to provide disabled access was denied after he sued the restaurant and it went out of business. (*Donald, supra,* 218 Cal.App.3d at pp. 184-185.) Relying in part on

7

section 1032(a)(4), the court noted its definition of "prevailing party" "is qualified by the limitation 'unless the context clearly requires otherwise.' " (*Donald,* at p. 185.) Neither party had obtained relief on the injunctive relief cause of action, and the defendant thus fell within section 1032(a)(4)'s definition of prevailing party [a defendant where neither party obtains relief], but the court held the defendant was not the prevailing party because the context clearly required otherwise: "The legal and factual context of the instant case compels the conclusion that Cafe Royale cannot be considered the prevailing party . . . ." (*Donald,* at p. 185.) Injunctive relief had been denied only because "the restaurant was no longer in business, not because access violations had not been demonstrated." (*Ibid.*) Further, the restaurant ceased operation because "the costs of compliance with access requirements" would have left it unable to operate profitably. (*Ibid.*) Despite the absence of judicial relief, the court observed that the plaintiff had filed his action to enjoin the restaurant's operation in violation of disability statutes and regulations, and "[t]he cessation of [its] operation . . . achieved that result." (*Ibid.*) The court held it was an abuse of discretion to determine that "by going out of business and rendering the issue moot, Cafe Royale 'prevailed' for purposes of attorney fees." (*Ibid.*)

Save Petaluma also cites *City of San Clemente v. Department of Transportation* (2023) 92 Cal.App.5th 1131 (*City of San Clemente*), in which the Fourth District recognized the language, " 'unless the context clearly requires otherwise' " creates an exception to section 1032(a)(4)'s definition of "prevailing party" to include "*a defendant in whose favor a dismissal is entered.*" (*Id.* at p. 1151, citing *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147-1148 (*DeSaulles*); see also *City of San Clemente,* at p. 1152 ["There may be an exception where context requires, and

8

the [plaintiff] relied on the catalyst theory to establish context required finding [the defendants] weren't prevailing parties"].)  In *City of San Clemente*, the court rejected the plaintiff's theory that its litigation was the catalyst of the agency's change in plans and held the exception did not apply. (*City of San Clemente,* at pp. 1151-1152.)  Nonetheless, its interpretation of the language of section 1032 refutes appellants' argument that a dismissal in all cases entitles a defendant to prevailing party status as a matter of right.

Appellants make no attempt to reconcile the qualifying statutory text ("unless the context clearly requires otherwise") with their bright-line position that all dismissals categorically entitle a defendant to an award of costs.  They do not address that qualifying language in their opening brief. In their reply brief they suggest reliance on it has been waived because "[p]etitioner never argued, and the trial court never found below, that the 'context clearly requires otherwise.' "  But their assertion that Save Petaluma failed to raise it in the trial court is unsupported by any citation to the record, and we may therefore disregard it.  (*Hernandez v. Vitamin Shoppe Industries Inc*. (2009) 174 Cal.App.4th 1441, 1453 [it is duty of party to support arguments by citing pages of record; appellate court may disregard any factual contention not supported by proper record citations].)  The argument that the trial court did not rely on the language is immaterial.  The trial court clearly *ruled* that the context required otherwise.  Further, "we must uphold the trial judge's decision if it's correct under any theory of law applicable to the case." (*City of San Clemente*, *supra*, 92 Cal.App.5th at p. 1152.)

Appellants likewise fail meaningfully to address the cases Save Petaluma cites.  They do not discuss *City of San Clemente* at all in their opening brief and in their reply brief give it only cursory treatment.  They do

not discuss *Molski* or *Donald* at all. Instead, their reply brief largely ignores Save Petaluma's arguments and authorities in favor of citing two additional cases that, like *Brown* and *Hambrick*, purport to state a broad, categorical bright-line rule but shed no more light on the matter than the cases cited in their opening brief.[3]

Save Petaluma cites two cases that further support its argument that a defendant in a case rendered moot is not necessarily the prevailing party entitled to costs. Neither involved a technical dismissal, but both had a procedural posture similar to this case and suggest that in a case like this one "the context" may "clearly require[]" a finding that the defendant is not the prevailing party. (§ 1032(a)(4).) In one, *Lewin v. Board of Trustees* (1976) 62 Cal.App.3d 977 (*Lewin*), the court held that when an administrative mandamus proceeding had become moot because the petitioner obtained the relief they were seeking, the *petitioner* was the prevailing party for cost purposes, and the defendant could not avoid cost liability by mooting the dispute. (See *id.* at pp. 983-984 [affirming award of costs to teachers who had

---

[3] See *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197-1199 (error to deny costs to plaintiff who achieved net monetary recovery; "It is clear from the statutory language that when there is a party with a 'net monetary recovery' (one of the four categories of prevailing party), that party is entitled to costs as a matter of right; the trial court has no discretion to order each party to bear his or her own costs"); *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 789, 805-806 (affirming award of costs to defendant after plaintiff's claims for restitution and declaratory relief were denied on the merits and request for injunction was denied on mootness grounds; defendant qualified both as " 'a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant' " and "thus it is entitled to costs as a matter of right"). Those cases are little different from, and shed no more light on the issue than, the *Brown* and *Hambrick* cases cited in appellants' opening brief.

been terminated from employment and were reinstated after initiating administrative mandamus proceedings challenging the employment action].) *Lewin* did not involve section 1032; it arose under the cost statutes applicable to mandamus proceedings (see §§ 1094.5, 1095). But it is nonetheless persuasive. (See *Santos v. Civil Serv. Bd.* (1987) 193 Cal.App.3d 1442, 1446 ["[t]here is no reason to treat cost awards made under [§] 1032 any differently from cost awards made under [§] 1094.5"].)

In the other case, *Miller v. American Honda Motor Co.* (1986) 184 Cal.App.3d 1014 (*Miller*), the court held it was not an abuse of discretion to deny costs to a cross-defendant where the cross-complaint had become moot (though, for reasons not apparent, had not been formally dismissed or disposed of in any manner). (See *id.* at pp. 1017, 1018, fn. 2, 1020-1021.) *Miller* stated that in determining which party prevailed, " '[a] party who nominally wins but does not receive any substantial recovery or successfully maintain any substantial defense should not receive costs' " and "consideration may be given to whether a party prevailed on the primary purpose of the litigation but for extraneous reasons did not receive a favorable judgment." (*Id.* at p. 1020.) Both cases undermine appellants' position that they were entitled to costs as a matter of right even though Save Petaluma obtained significant relief before appellants abandoned the plan to develop the property and rendered the case moot.

Apart from *Lewin* and *Miller*, the parties discuss no authority addressing a court's discretion to decide who prevailed for purposes of awarding costs when a dispute has become moot. A recent case, which Save Petaluma raised in a new authority letter before oral argument, strongly supports affirmance of the cost award. *Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381 (*Cisneros*), held that two petitioners in

administrative mandamus proceedings were prevailing parties as a matter of law under section 1032 after they obtained administrative stays that enabled them to achieve their litigation objectives before their claims became moot.[4] (See *Cisneros,* at pp. 426-431.) Their petitions were "denied" as moot rather than technically dismissed, but the appellate court said that distinction made no difference (see *id.* at p. 427, fn. 8) and reversed an order denying petitioners their costs. (*Id.* at p. 433.) Applying *Lewin*, the court also held the petitioners might be entitled to their costs under the statutes governing mandamus proceedings and directed the trial court to consider that issue on remand. (See *Cisneros,* at pp. 431-432.)

Save Petaluma also points out that our Supreme Court rejected the categorical rule appellants advocate—that *all* dismissals qualify defendants as prevailing parties under section 1032(a)(4) as a matter of right. (See *DeSaulles, supra,* 62 Cal.4th 1140.) *DeSaulles* held that when a plaintiff voluntarily dismisses a case after entering into a settlement in which it obtains "a net monetary recovery," the defendant is *not* a prevailing party. In such a situation, the dismissal is not a dismissal in the defendant's "favor" as that term is used in section 1032(a)(4). (*DeSaulles*, at p. 1158.) Moreover, the court held the plaintiff in such a circumstance *is* the prevailing party

---

[4] In that case, petitioners challenged administrative decisions by the Department of Motor Vehicles (DMV) to suspend their licenses after their arrests on charges for driving under the influence, contending the DMV had wrongly denied them a continuance of their suspension hearings. (*Cisneros*, *supra*, 104 Cal.App.5th at pp. 392, 393-394.) They obtained administrative stays that enabled them to continue driving while the mandamus proceedings were underway, and while the stays were in effect their licenses were reinstated because they were acquitted of the underlying criminal charges. (*Id.* at pp. 426-427.) The reinstatement of their licenses mooted their lawsuits challenging the DMV's hearing procedures. (*Ibid.*)

because she has obtained a " 'net monetary recovery' " entitling her to an award of costs. (*Ibid*.) The court interpreted the phrase " 'party with a net monetary recovery,' " to employ "a broad understanding of the word 'recovery' " that "encompasses situations in which a defendant settles with a plaintiff for some or all of the money that the plaintiff sought through litigation." (*Id*. at p. 1154.) Further, where two parties potentially fall within the definition of prevailing party, *DeSaulles* holds that not all instances in which a case is dismissed is the dismissal in favor of the defendant for purposes of a cost award under section 1032(a)(4). (See *DeSaulles,* at pp. 1152-1153.) As the court explained, the "basic purpose of" section 1032 is to "impos[e] costs on the losing party," and its definition of prevailing party "was intended to promote the equitable rule that unsuccessful plaintiffs could not evade the cost statute by dismissing their suit." (*DeSaulles*, at pp. 1152-1153.) The court there held the "definition of 'prevailing party' as 'a defendant in whose favor a dismissal is entered' was not intended to encompass defendants that entered into a monetary settlement in exchange for dismissal" and the equitable rule "does not apply to plaintiffs that have achieved some litigation success through settlement of the case." (*Ibid*.)

DeSaulles also bears on the meaning of other language in section 1032(a)(4). As we have indicated, in defining "prevailing party," subdivision (a)(4) sets forth a distinct rule for situations in which "any party obtains *other than monetary relief*" (italics added) and situations that are "other than as specified" in the first sentence of the definition. In those circumstances, it provides, "the 'prevailing party' shall be as determined by the court, and . . . the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides . . . ." *DeSaulles*'s broad interpretation of "net monetary recovery"

13

based on the equitable basis underlying section 1032 supports a similarly broad reading of the phrase "other than monetary relief." Save Petaluma cites this court's decision in *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 625, for the proposition that injunctive relief is "other than monetary relief" under section 1032(a)(4) and cites *DeSaulles* and other cases for the proposition that the interim relief it was afforded and the ultimate achievement of its primary purpose gave the trial court discretion to find, and supported its exercise of discretion in finding, that in light of such nonmonetary relief, Save Petaluma was the prevailing party.

Appellants fail to discuss *DeSaulles* in their opening brief and dismiss it in a sentence in their reply brief as involving "the distinguishing factor that the plaintiff in that case was deemed to have achieved some litigation success *'through settlement of the case.'"* (Bolding omitted.) Without discussing why that changes how the equitable interpretation adopted by our high court should be applied differently when success is achieved by way of pretrial rulings and defendants' decision not to pursue the challenged project, appellants' conclusory distinction is unpersuasive.

Our own research yielded a case specifically addressing the "other than monetary relief" provision in section 1032(a)(4). In *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, disapproved on other grounds in *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 457, the court observed that the plaintiffs had "obtained no monetary recovery, but did achieve 'other than monetary relief' through the issuance of a peremptory writ of mandate decertifying the EIR and vacating the approvals related to the project." (*Madera Oversight Coalition,* at p. 106.) These circumstances required the trial court to determine who was the prevailing party and granted it

14

discretion under the provision to " 'allow costs or not and, if allowed [to] apportion costs between the parties.' " (See *ibid*.) There, the plaintiffs' claims for writ of mandamus and declaratory and injunctive relief were based on violations of CEQA, the Planning and Zoning Law and the Water Code. (*Madera Oversight Coalition,* at p. 60.) The trial court granted in part and denied in part the plaintiffs' writ petition and both parties appealed. (*Id*. at pp. 60-61.) On appeal, it appears that the plaintiffs successfully defended their trial court victories and prevailed on additional merits arguments. (See *id*. at pp. 96-97, 105 [successfully defended trial court ruling that EIR's water assessment was inadequate], 79, 81-82, 85-86 [succeeded on appellate argument that mitigation measure relating to archeological sites was unlawful because it was unverified and that EIR's discussion of mitigation regarding such resources was inadequate]; 88, 91-92, 96 [succeeded on appellate argument of error in baseline used to quantify project's impacts].) The trial court had apportioned costs between the parties, which the Court of Appeal held it had discretion to do (*id*. at p. 106); however, it did not decide whether the trial court's apportionment was an abuse of discretion because "[t]he circumstances that served as the basis for that apportionment have changed by virtue of the greater success plaintiffs have achieved in this appeal." (*Id*. at p. 107.) It therefore vacated the trial court's apportionment order and remanded for that court to "exercise its discretion while taking into account how circumstances have changed as a result of this appeal." (*Ibid*.) *Madera Oversight Coalition* provides additional support for Save Petaluma's argument that its successes in the trial court and achievement of its ultimate goal overcame the presumption that dismissal of a case entitles a defendant to costs and vested the trial court with discretion under section 1032(a)(4) to

determine who was the prevailing party and to award or deny costs accordingly.

Appellants assert that even if they did not prevail, neither did Save Petaluma, and so at a minimum the cost award in its favor cannot stand. First, they say, Save Petaluma did not prove it was a catalyst. As we discuss further below, we disagree. But regardless, proving causation under a catalyst theory is not the only basis to be deemed a prevailing party under section 1032. The petitioners in *Cisneros* weren't catalysts; they were deemed to have prevailed not because they caused the defendant to change its behavior or acquiesce but because they obtained favorable provisional relief before the case became moot for reasons wholly unrelated and extraneous to the lawsuit. (See footnote 4, *ante,* p. 12.) Simply put, the petitioners in *Cisneros* achieved litigation success through the issuance of an administrative stay sufficient for them to be deemed prevailing parties.

Finally, appellants say *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770 "rejected the claim that merely obtaining some provisional relief entitles a petitioner to costs." They do not discuss the case and so it does not warrant discussion. Suffice it to say, it did not so hold and they misread it. Further, to the extent some of its language could be construed that broadly, the case is factually distinguishable, it predates *DeSaulles*, the court was not asked to, and did not, consider section 1032's qualifying language ("unless the context clearly requires otherwise") and it would be in considerable tension with *Cisneros*.

In short, we reject appellants' contention that the trial court's determination that Save Petaluma was the prevailing party under section 1032, and that appellants were not, either was legally erroneous or was an abuse of discretion. We conclude it was neither.

16

## II.

### *Entitlement to Attorney Fees*

As noted, the trial court awarded attorney fees under section 1021.5, which codifies the private attorney general doctrine of fee recovery (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317). In relevant part the statute states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)

" 'Generally, whether a party has met the statutory requirements for an award of attorney fees is best decided by the trial court, whose decision we review for abuse of discretion.' " (*The Kennedy Com. v. City of Huntington Beach* (2023) 91 Cal.App.5th 436, 456 (*Kennedy Com.*).) " 'Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.' " (*Jenkins v. Dermatology Management, LLC* (2024) 107 Cal.App.5th 633, 649 (*Jenkins*).) An appellant seeking to demonstrate an abuse of discretion faces a " ' "daunting task." ' " (*Ibid.*) An appellant must show that there is " 'no reasonable basis for the action' " or, put another way, that the court's ruling "exceeded the bounds of reason." (*Ibid.*) " 'The trial judge is considered to be in the best position to determine whether the [statutory] criteria [for a fee award] have been met, and its determinations

will not be disturbed "unless the appellate court is convinced that it is clearly wrong." ' " (*Kennedy Com.*, at pp. 456-457.) "[W]hen, as here, the fee order under review was rendered by a judge other than the trial judge, we may exercise 'somewhat more latitude in determining whether there has been an abuse of discretion than would be true in the usual case.' " (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

De novo review applies where the determination of whether the criteria for an award of attorney fees and costs have been satisfied " ' "amounts to statutory construction and a question of law." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213 (*Whitley*).) However, appellants have not raised any issue of statutory interpretation.

Appellants assert that *none* of the required elements of section 1021.5 were met. They do not frame their arguments in terms of the abuse of discretion standard of review. Even bearing in mind our "somewhat" less deferential approach to these issues because the trial judge who granted the attorney fee motion did not preside over the merits-related portion of the case (*Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at p. 616), appellants have not affirmatively demonstrated that the trial court's findings and holdings lacked *any* " 'reasonable basis.' " (*Jenkins*, *supra*, 107 Cal.App.5th at p. 649.)

**A. Elements for Attorney Fee Recovery Under Section 1021.5**

In *Vasquez v. State of California* (2008) 45 Cal.4th 243 (*Vasquez*), our high court articulated the statutory elements for recovery of attorney fees under section 1021.5: "[A] court may award [attorney] fees only to 'a successful party' and only if the action has 'resulted in the enforcement of an important right affecting the public interest. . . .' [(§ 1021.5.)] Three

18

additional conditions must also exist: '(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.' Section 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees [citation], and within the statutory parameters courts retain considerable discretion. '[T]he Legislature has assigned responsibility for awarding fees under section 1021.5 "not to automatons . . . , but to judges expected and instructed to exercise 'discretion.' " ' [Citations.] In deciding whether to award fees, the court 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.' " (*Vasquez*, at pp. 250-251.)

"[A] plaintiff who . . . has not succeeded in obtaining 'a judicial resolution' [citation] or 'a judicially recognized change in the legal relationship between the parties,' " may still recover attorney fees if it meets the elements of the catalyst theory. (*Vasquez, supra,* 45 Cal.4th at p. 260.) Under a catalyst theory, a fee claimant must show the defendant has "change[d] its behavior *substantially because of*, and *in the manner sought by*, the litigation." (*Graham v. DaimlerChrysler* (2004) 34 Cal.4th 553, 560 (*Graham*), italics added.) This causation prong does not require proof that " 'litigation [was] *the only cause* of defendant's acquiescence.' " (*Kennedy Com.*, *supra*, 91 Cal.App.5th at p. 457.) " 'Rather, [the] litigation need only be a substantial factor contributing to the defendant's action.' [Citation.] 'In conducting the causation analysis, " ' "[t]he appropriate benchmarks . . . are

19

(a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." ' ' " ' " (*Ibid*.) "Where there is no causal connection between the plaintiff's action and the relief obtained, an attorney fee award is not proper" under a catalyst theory. (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353.) There are two additional elements, both judicially developed, that a fee claimant must prove to recover fees under a catalyst theory: (1) "that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense," and (2) "that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 (*Tipton-Whittingham*).) The merits inquiry entails a determination "that the lawsuit is not 'frivolous, unreasonable or groundless.' " (*Graham*, at p. 575.) It is "not unlike the determination [a trial court] makes when asked to issue a preliminary injunction, i.e., . . . a determination at a minimum that ' "the questions or law or fact are grave and difficult." ' " (*Id.* at pp. 575-576.)

The parties dispute whether this is a catalyst case. As it did in the trial court, Save Petaluma disavows that it is relying on a catalyst theory, and appellants assert it forfeited any right to recover fees under such a theory. We disagree that there was a forfeiture. In the trial court and on appeal, Save Petaluma asserted as an alternative argument that even if this is a catalyst case, it satisfied the two additional elements required under that theory (proof of a meritorious lawsuit and settlement attempts). For the reasons we will discuss, we conclude this is not a catalyst case. But, even if it were, we conclude plaintiffs met the additional elements for catalyst cases.

## B. The Trial Court's Ruling

The trial court found Save Petaluma was the successful party under section 1021.5 based on all the circumstances, explaining why at length in two single-spaced pages of findings. Because we afford its ruling considerable deference, we begin by quoting those findings in full:

"As explained in the order on the motions regarding costs, the history of this litigation, as outlined above, demonstrates that Petitioner is the successful party and achieved its goals. [¶] First, Petitioner brought a motion for preliminary injunction and administrative stay. This court granted [the] motion, finding that it met not only the standard for an administrative stay, but the standards required for a preliminary injunction, including a sufficient showing on the probability of success. [¶] Second, [the City and Safeway] filed both a special motion to strike SLAPP suit and a demurrer, which fundamentally challenged all aspects of Petitioner's claims. The demurrer attacked both the substantive CEQA claims and the claim that [the City] failed to provide a fair hearing. In it, [the City and Safeway] asserted that Petitioner had failed to exhaust administrative remedies, the petition was untimely under the statute of limitations, [the City's] actions were not subject to CEQA because they were not discretionary, and that it was appropriate, as a matter of law, for [the City] to base its decision to grant the approvals on the threat that it would otherwise face a lawsuit from [Safeway]. In the special motion to strike, [the City and Safeway] moved to strike the second cause of action for denying the public a fair hearing. They argued that this cause of action arose from protected activity because [it] was based on [Safeway's] alleged threatening communications to [the City] that [Safeway] would sue [the City] for monetary damages if [the City] did not approve the Project; thereby improperly influencing [the City's] decision. Because of its

21

particular nature and two-part test, moreover, the special motion to strike involved not merely analysis of the pleadings, but evidence on the validity of the claims. In a roughly 81-page decision,[5] explaining the court's analysis in detail, this court denied the motion to strike and overruled the demurrer. [¶] Third, [Safeway] filed a writ petition with the court of appeal challenging this court's decisions on all three matters. The court of appeal summarily denied that petition on December 16, 2019. [¶] Fourth, Petitioner brought a motion for leave to conduct discovery which this court granted, and a motion to compel further discovery responses, which this court partly granted in 2020. The court made these decisions on finding that Petitioner had made a sufficient showing regarding the bases for discovery, in light of the fact that CEQA matters are ordinarily restricted to the administrative record and a party must demonstrate a valid basis for obtaining discovery in such litigation. [¶] Fifth, in June 2021, after a period with no active litigation, Petitioner sought to schedule a new case management conference in order to set a new hearing and proceed with litigation, but [the City and Safeway] opposed this request. They did so by expressly contending that no further proceedings should be held since the litigation had been rendered moot. This was based on their claim that during the litigation [the City's] approval for the Project had expired in April 2021. In their papers on the motions to tax or strike costs, [the City and Safeway] also admitted, again, that during the pendency of this litigation, the approval at issue expired without the Project being built. They also asserted that because of the approval expiration the

---

[5] We agree with appellants that the trial court misstated the length of that decision: it is 25 pages, not 81.

Project may not now be built, at least without first obtaining a new approval. They reiterate this position again in their opposition to this motion.

"It was this litigation which prevented the Project from being built. Petitioner, as noted, obtained a stay and preliminary injunction preventing any construction on the Project pending this litigation, and the court of appeal dismissed the challenge to this. This court also found in its order on the motions to tax or strike costs that [Safeway] had informed [the City] that 'despite [its] best efforts to move forward with construction, [it] has been precluded from doing so by the stay and preliminary injunction,' and then reiterated 'But for the granting of the stay and preliminary injunction, [it] would be well underway in terms of constructing[] the Project.' The stay and injunction which Petitioner obtained had the effect of a permanent injunction, prohibiting the challenged Project pending these proceedings, resulting in the approval expiring without [Safeway] being able to realize the Project. It is clear from the record and history of this litigation that Petitioner is a 'successful' party for the purposes of . . . section 1021.5. As in the cases cited above, Petitioner successfully obtained a stay and preliminary injunction barring implementation of the Project pending the litigation, with a challenge to the stay and injunction being dismissed. The stay and injunction prevented the realization of the Project. [The City and Safeway] claim that the approval simply expired by its own terms, but that does not change the fact that, as [Safeway] itself admitted, the Project would have been built before expiration had it not been for the stay and preliminary injunction. They took no further action and adamantly opposed the need for any further litigation on the basis that the action had become 'moot,' in essence because Petitioner had gotten exactly what it wanted. The court notes that in some ways, [the City and Safeway] claiming that the action had

become moot by their own actions would also be tantamount to improperly seeking an interlocutory remand to correct errors without a decision on the merits. Courts may not in CEQA actions use an interlocutory remand where to do so would be to short-circuit litigation and prevent the petitioner from obtaining a decision on the merits, such as where the remand would allow the respondent to cure the defects or otherwise avoid further litigation challenging its actions. [Citations.]

"Petitioner was also successful at each step of the litigation prior to the dismissal. As noted above, it not only obtained the stay and preliminary injunction, but it survived a demurrer and special motion to strike, it survived a challenge to these with the court of appeal, and it prevailed in its request for discovery."

C.    **Analysis**

We begin with the trial court's determination that Save Petaluma established the elements for attorney fees recovery under section 1021.5 on a non-catalyst theory.

1.    ***The Trial Court's Finding that Save Petaluma Was the Successful Party on a Non-Catalyst Theory Was Well Within Reason.***

Appellants challenge the court's determination that Save Petaluma was a successful party under the standard governing non-catalyst cases. They argue Save Petaluma "failed to carry its burden to show . . . a *successful judicial resolution"* because it "did not succeed in obtaining a final judgment on the merits" or "judicial vindication of its avowed litigation goals." They contend that, "[i]nstead, the project's design review approval expired in accordance with its own terms."

24

Appellants' framing of the issues fails to acknowledge that we do not start from scratch, as if we were free to address de novo the " 'intensely factual, pragmatic' " issue of whether Save Petaluma was the successful party.  (*Schmier v. Supreme Court* (2002) 96 Cal.App.4th 873, 878.)  On the contrary, as explained in *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 494, "Generally, the question of whether a party is a prevailing party is best left to the trial courts," because "it is a factual pragmatic inquiry."  (See also *Graham, supra,* 34 Cal.4th at p. 565 ["we have taken a broad, pragmatic view of what constitutes a 'successful party' "].)  The question we must answer on appeal is simply whether the trial court's finding that Save Petaluma was successful has any reasonable basis.

Contrary to appellants' assertion, success for purposes of section 1021.5, even under a non-catalyst theory, does not invariably require a "final judgment on the merits."  Our high court in *Vasquez* distinguished catalyst cases from non-catalyst cases by stating, "a plaintiff who has not succeeded in obtaining 'a judicial resolution' [citation] or 'a judicially recognized change in the legal relationship between the parties' [citation] must obtain attorney fees under the catalyst theory, or not at all."  (*Vasquez*, *supra*, 45 Cal.4th at p. 260.)  In *Vasquez*, the plaintiff had obtained a stipulated injunction that was entered as a final judgment.  (*Ibid*.)  However, the court explained that "[c]ases . . . in which the plaintiffs have obtained *injunctions or stipulated injunctions have not been treated as catalyst cases*." (*Ibid*., italics added.)  As an example, it cited *County of Colusa v. California Wildlife Conservation Bd*. (2006) 145 Cal.App.4th 637, 657-658 (*Colusa*), which it described in a parenthetical, as "preliminary injunction and stay." (*Vasquez*, at p. 260.)

*Colusa* was a multi-party land use case that upheld an award of private attorney general fees after the plaintiff obtained a preliminary injunction and administrative stay that led to a negotiated settlement. (See *Colusa, supra,* 145 Cal.App.4th at pp. 648-651.) There, a county had entered into a Williamson Act (Gov. Code, § 51200 et seq.) contract with a landowner limiting the use of his land to agricultural and compatible uses that did not include use as a wildlife refuge or managed wetlands. (*Colusa*, at p. 642.) Subsequently, state agencies negotiated with the landowner to create a wildlife habitat on the property that would have prohibited cultivation of agricultural crops for commercial gain. (*Id*. at pp. 642-643.) When the state agencies informed the county of the proposed agreement and suggested it would be compatible with the Williamson Act agreement, the county disagreed and "expressed its CEQA and Williamson Act compatible use concerns." (*Colusa,* at p. 644.) After two farm bureaus sued the landowner and state agencies alleging violations of those statutes, the county filed a cross-complaint and petition for writ of mandate seeking an order allowing it to reassess the property at full value and requiring specific performance of the Williamson Act contract or an injunction preventing the landowner from using his property as a wildlife refuge and wetland. (See *Colusa,* at p. 644.) The county also sought to compel the state agencies to rescind their approval of the acquisition of landowner's property and to comply with the procedural requirements of the Williamson Act. (*Colusa,* at pp. 644-645.)

The county obtained a preliminary injunction enjoining development of a wildlife refuge on the land and an administrative stay of state agencies' decision approving the acquisition. (*Colusa, supra,* 145 Cal.App.4th at p. 645.) The parties then engaged in settlement discussions, and ultimately the landowner and state agencies agreed to amend their easement to permit

26

livestock grazing on the property.  (*Id.* at p. 646.)  The county then dismissed its Williamson Act causes of action and, after also settling the remaining claims, moved for, and was awarded, attorney fees under section 1021.5 for prevailing on those two causes of action.  (*Colusa,* at p. 646.)  The trial court found the county had prevailed because its claims were " 'responsible for transforming the pre-litigation agricultural prohibition [under the easement] into the current agreement . . . allowing grazing on the property, in perpetuity.' "  (*Id.* at p. 649.)  The Court of Appeal affirmed, holding the trial court did not abuse its discretion in finding the county prevailed even though the state agencies never re-noticed their approvals or made appropriate findings and the landowner was not prevented from using his land as a wildlife refuge.  (*Id.* at pp. 649-659.)  Applying the "broad, pragmatic" standard of success, the appellate court reasoned the county prevailed on both causes of action by demonstrating a reasonable probability of success sufficient to obtain a preliminary injunction, which the trial court could reasonably find prompted the defendants to come " 'to the table' " to resolve the county's Williamson Act concerns.  (See *Colusa,* at p. 651.)  "The practical result was an agreement regarding the easement, which agreement excused the findings requirement . . . [citation] and apparently satisfied the County's notice concerns."  (*Ibid.*)

The two pages of the *Colusa* opinion cited by our high court in *Vasquez* include the statement by the *Colusa* court that, "Although a final judgment was never entered resolving the merits of the County's claims of the State Agencies' procedural violations of the Williamson Act (both lack of findings *and* inadequate notice) and compelling the State Agencies to comply, a preliminary injunction was entered on a finding of reasonable probability of success on the merits of such claims.  Indeed, the State Agencies did not

27

contest the merits of the procedural claims in their opposition to the motion for preliminary injunction. In light of that injunction and stay, the State Agencies then began to seriously address with the County its Williamson Act concerns, ultimately resulting in a mutually satisfactory amendment of the easement. The State Agencies only became substantially interested in the amendment when the Traynham project was stayed and the conservation agreement was at risk after the issuance of the preliminary injunction and stay. The record can reasonably be read to find that the State Agencies would not have followed through with the amendment, which was initially floated as an idea after the filing of the Farm Bureau's petition, without the pressure of the County's action. The trial court did not abuse its discretion in finding the County's action was necessary." (*Colusa*, *supra,* 145 Cal.App.4th at p. 657.) The cited pages also include *Colusa*'s holding rejecting the state agencies' argument that the trial court erred in failing "to make the additional findings necessary for a 'catalyst' theory of recovery," as "unnecessary because this is not a catalyst case." (*Ibid.*) And they contain the *Colusa* court's explanation: "The State Agencies claim the trial court was required to make these additional findings in this case because the County voluntarily dismissed its claims following settlement. The State Agencies have applied the catalyst theory the wrong way. What makes a case come under the catalyst theory is not the voluntary action of the plaintiff, but the voluntary action of the defendant without any judicial resolution of the issues. (See Pearl, California Attorney Fee Awards (Cont.Ed.Bar 2d ed.2006) § 2.24, p. 61.) *This case is not one involving a voluntary change by the State Agencies without any judicial resolution of the issues. Here, the County achieved its desired result, as we have explained, through the preliminary injunction and stay issued by the trial court.* Even in the federal courts . . . , a

28

plaintiff who obtains a preliminary injunction that alters the relationship of the parties may have obtained the 'judicial imprimatur' necessary for an award of attorney fees—without the catalyst theory." (*Id*. at p. 658, italics added.)

*Colusa* obviously supports Save Petaluma's argument that this is not a catalyst case. But beyond that decision, our Supreme Court's citation to the pages in which *Colusa* rejected the precise argument made by appellants here—that a preliminary injunction cannot satisfy the "judicial imprimatur" requirement in a non-catalyst case—suggests its approval of *Colusa*'s analysis. Further, Save Petaluma cites additional cases (which, along with *Colusa*, the trial court also cited) supporting its position that a preliminary injunction in a case that ends without final judgment, need not be treated as a catalyst case: *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 590-597 (*Champir*) [no abuse of discretion in concluding homeowners were successful when they obtained preliminary injunction barring homeowners association from constructing traffic light, before case was mooted through association's compliance with covenants, conditions and restrictions]; and *Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249, 256-258 (*Zuehlsdorf*) [upholding fee award to parent who obtained preliminary injunction requiring school officials to allow daughter to participate on soccer team, followed by denial of permanent injunction as moot after season ended].)

Appellants seek to distinguish these cases, claiming *Champir* and *Zuehlsdorf* involved other fee-shifting statutes, not section 1021.5 without explaining why that matters. And it *doesn't* because both cases applied

29

essentially the same legal standard as the one that applies under section 1021.5.[6]

In light of all these authorities, the trial court was well within the bounds of reason in concluding that Save Petaluma was no less "successful" for purposes of section 1021.5 because it achieved the relief it sought through a preliminary injunction and stay (not to mention through its successful defenses against appellants' writs challenging that relief as well as their demurrer and anti-SLAPP motion) rather than through a final judgment. As the trial court found, "It was this litigation which prevented the Project from being built." The stay and injunction it obtained "prevent[ed] any construction on the Project pending this litigation" and this court dismissed appellants' writ challenging that relief. Simply put, issuance of the administrative stay and preliminary injunction effectuated " 'a judicially recognized change in the legal relationship between the parties' " to such an extent that it mooted the need for Save Petaluma to obtain a final " 'judicial resolution' " of its claims. (*Vasquez, supra*, 45 Cal.4th at p. 260.) This was not a catalyst case.

Appellants argued in the trial court, and again argue here, that "the [City's] approval [of the gas station project] automatically expired by its own terms," implying this—rather than the litigation—was what prevented the project from moving forward. As the trial court explained, the expiration of

---

    [6] *Champir* involved Civil Code section 5975, pursuant to which the success analysis " 'focuses on who prevailed "on a practical level" by achieving its main litigation objectives.' " (*Champir, supra*, 66 Cal.App.5th at p. 590.) *Zuehlsdorf* involved Government Code section 800, which likewise requires " 'an evaluation of whether a party prevailed " ' "on a practical level," ' " ' " including considering "the extent to which each party has realized its litigation objectives." (*Zuehlsdorf, supra*, 148 Cal.App.4th at p. 257.)

the project approvals "does not change the fact that, as [Safeway] itself admitted, the Project would have been built before expiration had it not been for the stay and preliminary injunction. They took no further action and adamantly opposed the need for any further litigation on the basis that the action had become 'moot,' in essence because Petitioner had gotten exactly what it wanted."

Appellants do not grapple with these findings or challenge them as an abuse of discretion. Instead, they reprise another argument they made below, that preventing construction of the gas station was not one of the primary goals of the litigation, and they accuse the trial court of having "misstated—or invented—the declared primary goals of the litigation" when it referred to preventing the project from being built.

Appellants' hyperbole is disrespectful of the trial court, and their argument lacks merit. It is true that prevailing on a CEQA claim does not necessarily result in preventing a project from going forward, and appellants correctly point out that CEQA does not create a legal right to stop a project. But preventing projects from proceeding without consideration—and possible mitigation—of health, safety and environmental effects *is* the goal of CEQA. (See Pub. Resources Code, § 21002 [declaring state policy that public agencies should not approve projects as proposed if feasible alternatives or feasible mitigation measures are available that would substantially lessen their significant environmental effects and that intent of CEQA procedures is to assist public agencies in systematically identifying those effects, alternatives and mitigation measures]; *California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 386 ["the Legislature has made clear—in declarations accompanying CEQA's enactment—that public health and safety are of great importance in the statutory scheme"].) As our

31

high court long ago explained, "A fundamental purpose of an EIR is to provide decision makers with information they can use in deciding *whether* to approve a proposed project . . . ." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 394.)

Save Petaluma's petition for writ of mandate detailed specific adverse health and safety effects the proposed 16-pump gas station would have on residents, children and teachers whose homes and schools were in close proximity to the project site, and challenged the City's approval of the project without requiring an EIR based on Safeway's threats and intimidation rather than consideration of those effects and any alternatives an EIR would have revealed. It asserted the project approvals were "contrary to law and invalid and must be set aside." And it sought a writ of mandate directing the City to "[v]acate and set aside all approvals of Project entitlements," "[c]omply with" CEQA and the local zoning ordinance, and "[r]efrain from issuing or approving any further permits or entitlements for the Project until the City [had] prepared and certified a legally adequate [EIR] and complied with all other requirements of CEQA." Alternatives might have included constructing a smaller gas station or constructing a station on a site further away from residences, schools and day care centers. And, of course, one alternative would have been choosing not to approve the project at all.

To the extent Save Petaluma sought to prevent the project from going forward as proposed, or even at all, its goal was legitimate. Seeking to avoid having a project approved and built without consideration of its significant environmental effects is consistent with CEQA, and challenging the City's reliance on improper considerations such as threats of economic reprisal was also legitimate. The fact that the City's approvals of the project eventually expired (after getting extended to the maximum extent permitted under local

law) does not undermine the fact that Save Petaluma's success in the litigation ultimately prevented appellants from moving forward and permitting construction of a project without addressing significant environmental concerns and from doing so based on improper considerations.

Insofar as appellants indirectly challenge the trial court's finding that Save Petaluma's litigation was the cause of appellants' abandonment of the project, they fail to show the finding was an abuse of discretion. The chronology of events and history of the litigation fully support the trial court's finding. First, Safeway's documented campaign against the EIR—including serving city agencies with California Public Records Act requests designed to support its claim that city council members were biased against the project, threatening the City with suit for " 'tens of millions of dollars of damage' " backed up by a draft writ petition and complaint, threatening to "aggressively pursue legal recourse, including the fast-tracking of discovery and depositions" and threatening individual council members that they would "be required to retain your own counsel" if it filed the suit—all unless the City vacated its decision to require preparation of an EIR—supports the inference that Safeway feared preparation of an EIR would lead to more evidence and wider publicity about health and safety issues and lead to imposition of mitigation requirements or even outright disapproval of the project. The City's initial unanimous decision to require an EIR and quick turnabout to reverse that decision after holding a new hearing that, according to a councilmember and the city manager, it held in response to Safeway's threat of a lawsuit with "millions of dollars of financial exposure" and the lack of City funds to fight it supports the inference that the City acted based on Safeway's threat rather than a genuine determination that an EIR was not required. In ruling on Save Petaluma's requests for stay and preliminary

injunction, the trial court acknowledged Save Petaluma's evidence showing the City's decision "was based on financial considerations from the threat of lawsuits" and that this factor "support[ed] the injunction here."

The evidence also strongly supports the inference that appellants' failure to pursue the project prior to final resolution of the case was, in whole or part, the result of the litigation. As the trial court pointed out, Safeway admitted in a letter to the City in February 2020, that "despite [its] best efforts to move forward with construction, *it has been precluded from doing so by the stay and preliminary injunction*" and that, "[*b*]*ut for the granting of the stay and preliminary injunction, [it] would be well underway in terms of constructing the* [*Project*]." (Italics added.) Further, while it was not a final judicial resolution, the trial court's October 19, 2019 order did not bode well for Safeway's and the City's defenses to Save Petaluma's action if they had extended the approval deadline and pursued the litigation to completion. In its pretrial rulings, with which the judge who decided the fee motion was familiar, the court rejected, at least preliminarily, all or virtually all the arguments appellants raised, at least some of which they presumably would have needed to prevail on to obtain a final judgment in their favor.[7] In short,

---

[7] It rejected the arguments in their demurrer and motion to strike that Save Petaluma's claims were barred by failure to exhaust administrative remedies and by the statute of limitations. It rejected their claim that the City lacked discretion to consider or mitigate the project's impacts and CEQA therefore did not apply, observing that the City's zoning ordinance contained broad language giving it discretion to approve or disapprove a project or require modifications, including based on such criteria as " 'promotion of the public health, safety, and general welfare.' " It held the ordinance "on its face is more broad and open-ended than the ordinance language set forth in [the case appellants relied on]." Also weighing against the argument that the City's approval was ministerial and exempt from CEQA, was the City's own interpretation of the ordinance as discretionary as evidenced by its

34

in light of the trial court's rulings early in the litigation, appellants faced a very real risk that in the end they would lose the case, and it is reasonable to infer their decision not to proceed was at least in part based on the risk made evident by the court's earlier rulings.

Finally, appellants' attempt to analogize this case to three other decisions issued by this division is unavailing. None is factually similar to this case in a way that matters.[8]

preparation of a mitigated negative declaration and notice of determination, which "by definition" were CEQA decisions.

Considering Save Petaluma's writ claim that the City failed to provide a fair hearing and based its decision not to require an EIR on the financial exposure Safeway threatened rather than on CEQA criteria, the court addressed the cases appellants relied on and found "no indication" a city could appropriately "base a decision on the threat of lawsuit" or that there could not be a "violation of the right to a fair hearing" based on a decision made "solely out of concern for the costs of potential litigation over the decision" while "avoid[ing] the duty to conduct a hearing on the actual merits of the matter before it."

While the court made no final determinations of fact in deciding to grant the stay and preliminary injunction, it considered and applied the law to Save Petaluma's evidence. As it noted, "[u]nder the 'fair-argument' test, an EIR must be prepared whenever 'it can be fairly argued' based on substantial evidence in the record that the project *may* have a significant environmental impact" "even if other substantial evidence supports the conclusion that there are no significant impacts." Save Petaluma had provided "evidence . . . of experts identifying potential impacts of the Project" and that the City's "own staff report found there to be conflicting evidence on the impacts," which "may support a fair argument" that would "require an EIR." This, and the evidence showing the City's decision "was based on financial considerations from the threat of lawsuits" supported the injunction.

[8] Appellants rely on isolated quotations from *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 364-370 [reversing fee award]; *Center for Biological Diversity v. California Fish & Game Com.* (2011) 195 Cal.App.4th 128, 131, 138-142 [reversing fee award]; and *Artus v. Gramercy Towers*

For all these reasons, the trial court's determination that Save Petaluma was a prevailing party under a non-catalyst theory is supported by substantial evidence.  Appellants have failed to show it was lacking in reason.

### 2. *The Trial Court Did Not Act Without Reason in Finding Save Petaluma Vindicated an Important Right.*

Relying principally on *Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398 (*Canyon Crest*), the City and Safeway assert that the litigation did not "enforce[] . . . an important right affecting the public interest" (§ 1021.5) because "merely obtaining temporary injunctive relief based on allegations of inadequate CEQA review is not the 'vindication of an important public right.' "  They assert that the appellate court in *Canyon Crest* "f[ound] an important right under CEQA to mean an

---

*Condominium Assn.* (2022) 76 Cal.App.5th 1043, 1055-1058 (*Artus*) [affirming denial of fees under abuse of discretion standard].)  In *Karuk* and *Center for Biological Diversity*, we held section 1021.5 would not support awards of attorney fees in cases that resulted only in remands to administrative agencies to reconsider previous decisions to address mere procedural defects and no substantive change in the agency's position. (*Karuk*, at pp. 364-369; *Center for Biological Diversity*, at pp. 131, 141.)  In *Artus*, the plaintiff obtained a preliminary injunction restraining her homeowner's association from enforcing some, but not all, the rules and guidelines her suit challenged.  (*Artus*, at p. 1047.)  Two of her causes of action were then dismissed on demurrer and an anti-SLAPP motion, preventing her from obtaining damages and the court-appointed monitor she sought.  (*Ibid*.)  The trial court denied fees, finding she had achieved only one of her four litigation objectives and that the win was procedural and much less significant than the ones she failed to achieve.  (*Id*. at p. 1053.)  On appeal, we affirmed, noting the plaintiff had not even addressed the threshold "successful party" element and had failed to show her procedural victory significantly benefited even other members of the association.  (*Id*. at p. 1057.)  Unlike here, the plaintiffs' interim successes in those cases accomplished no significant or lasting change.

order or agreement to prepare an EIR." This argument disregards both our standard of review and the controlling legal standard and also misreads the caselaw.

As *Canyon Crest* itself holds, the trial court's determination of whether litigation has enforced an important right is subject to abuse of discretion review. (See *Canyon Crest*, *supra*, 46 Cal.App.5th at p. 409.) As we have explained, the fact that a plaintiff prevails in a manner that obviates the need for the trial court to resolve the ultimate merits of a right claimed to be important (such as, here, CEQA compliance and a fair hearing) does "not necessarily foreclose the plaintiff from obtaining attorney fees" under section 1021.5. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 938 (*Woodland Hills*) [addressing recoverability of fees in mandamus action that resulted in remand to local agency for further findings].) In such a case, the trial court, exercising "its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (*Ibid.*; see, e.g., *Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 436 (*Rich*) [affirming plaintiff's entitlement to fees under *Woodland Hills* standard where parties settled CEQA suit without determination that city actually violated CEQA].) Where the record "indicates, at the very least, that the court confronted substantial questions" as to the merits of the ultimate issue, the trial court in its discretion must determine "from a realistic perspective, whether or not the litigation has 'resulted in the enforcement of an important right affecting the public interest' within the meaning of section 1021.5." (*Woodland Hills,* at p. 938.)

37

The City and Safeway do not discuss this legal standard much less argue the court abused its discretion in concluding it was met here.

Here, the trial court found that Save Petaluma vindicated an important right because "[i]t enforced both CEQA and the claim that [the City] improperly decided to approve the Project solely because of [Safeway's] threat of lawsuit. [The City and Safeway] contend that [Save Petaluma] failed to prevail on either issue but, as explained, [Save Petaluma] had been successful at each stage of the action while the stay and preliminary injunction it obtained had the practical effect of preventing the Project and undoing the approvals at issue." We presume the trial court acted within its discretion in concluding this prong was met unless the City and Safeway affirmatively demonstrate otherwise (*Jenkins*, *supra*, 107 Cal.App.5th at p. 649), and they must convince us the trial court was " ' "clearly wrong" ' " (*Kennedy Com.*, *supra*, 91 Cal.App.5th at p. 457).

They have not done that. They do not argue the trial court *lacked discretion* to decide that this lawsuit, on these facts, enforced an important right. " 'Arguments should be tailored according to the applicable standard of appellate review,' " and the "[f]ailure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)

Nor does anything in *Canyon Crest* suggest the court lacked such discretion. The City and Safeway barely discuss that decision. Yet they say the court's ruling "blatant[ly] disregard[s]" and "is in <u>direct conflict with</u>" it, and so we are compelled to address it in some depth.

At issue in *Canyon Crest* was a CEQA lawsuit challenging a self-represented defendant's plan to build a single-family residence on his vacant hillside property that would have required the removal of a protected oak

tree, brought by some of his neighbors who wanted to protect their privacy and views. (*Canyon Crest*, *supra*, 46 Cal.App.5th at pp. 401, 404.) After filing suit, the neighbors obtained an administrative stay of the project's permit approvals based on a showing of a reasonable probability of success that an EIR was required, and shortly after that the property owner asked local permitting authorities to vacate his project approvals because he could not afford to litigate. (*Id*. at p. 407.) Planning staff recommended doing so but only reluctantly, noting they did not agree that an EIR was required. (*Ibid*.) Acting on that recommendation, the planning board vacated the project approvals but said that the application would remain on file, and that it would be processed "in accordance with all relevant regulations" if the property owner wanted to pursue it further. (*Ibid*.) One board member indicated that the property owner had lawfully met every requirement for a permit, expressed disappointment the project was not going forward and said the neighbors had " 'abused' " CEQA. (*Canyon Crest,* at p. 407.) In these circumstances, the appellate court upheld the trial court's ruling that the plaintiffs were not entitled to an award of private attorney general fees.

As relevant here, *Canyon Crest* held the trial court did not abuse its discretion in finding that the lawsuit did not result in the enforcement of an important right affecting the public interest. (*Canyon Crest*, *supra*, 46 Cal.App.5th at p. 409.) Contrary to the City's and Safeway's broad interpretation of the decision, the appellate court did not hold that this was because obtaining an EIR was legally required in order to satisfy this prong. Quite the opposite: it *declined* to rule that broadly. In upholding the court's ruling, it specifically said that the trial court did *not* require the plaintiffs to "actually 'obtain or secure additional environmental review' " in order to prove that the lawsuit vindicated an important right (rejecting an argument

39

the trial court had erred in this regard), but merely "cited" the failure to obtain such relief "*as evidence supporting its conclusion* that the litigation did not enforce any important rights and the stay merely preserved the status quo pending trial." (*Id*. at p. 410, italics added.)[9]  Hence, the appellate court imposed no categorical rule that obtaining such relief is a pre-condition for obtaining private attorney general fees in a CEQA case.

In upholding the trial court's exercise of discretion to deny fees, the appellate court also addressed two other issues.  It held that merely alleging a viable CEQA claim is not sufficient to satisfy this prong.  (*Canyon Crest*, *supra*, 46 Cal.App.5th at p. 411.)  It also held the trial court was *within its*

---

[9] The City and Safeway assert the trial court "disregarded" not only *Canyon Crest* in this regard but also four other CEQA cases also "finding" the same thing.  Those cases, cited only in a footnote string citation without discussion (or even pinpoint page citations), impose no such requirement either.  They reflect only that securing an EIR can be sufficient to meet the vindication of an important public right prong in a CEQA case.  None hold it is required.  (See *Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, 557-558; *Starbird v. County of San Benito* (1981) 122 Cal.App.3d 657, 665; *Friends of "B" Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 993; *Rich, supra,* 98 Cal.App.3d at pp. 435-436.)  Three were cases that went to judgment, and one involved a settlement (*Rich*).  None address a court's discretion to find an important public right has been vindicated in a CEQA case that has been dismissed after protracted litigation in which provisional relief has been granted preventing a challenged development project from coming to fruition *at all*.

Nor does *Nat'l Parks & Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, a case newly cited in the reply brief but not discussed.  That case stands for the proposition that when a successful challenge to the adequacy of an EIR is reversed on appeal, the plaintiff is no longer a successful party for purposes of recovering private attorney general fees and the resulting fee award must be automatically reversed.  (See *id*. at pp. 236, 239.)

*discretion* to conclude that the plaintiffs' defeat of the project was not by itself sufficient to prove that an important right had been vindicated, given the facts. (*Id*. at pp. 410-411.) On this point, it reasoned there was no evidence local planning authorities would change their approach to the project if the property owner decided to reapply for permits, and "all indications" in the record were that they in fact continued to believe no CEQA review was required. (*Canyon Crest,* at pp. 410-411.)

In short, *Canyon Crest* in no way categorically precludes a finding that an important right has been vindicated when a CEQA action has been dismissed without an order or agreement to prepare an EIR. Moreover, the trial court's discretion in *Canyon Crest* to decide no important right was vindicated on the facts of that case does not mean the trial court in this case was compelled as a matter of law to conclude the same thing (i.e., had no discretion to conclude otherwise).[10] (See, e.g., *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 ["Those opinions affirming a discretionary ruling [to deny attorney fees under section 1021.5] do not compel the conclusion that the ruling here [awarding them] was an abuse of discretion"].)

In sum, appellants' argument concerning this element, all of about two pages, is insufficient to demonstrate error.

---

[10] Save Petaluma also argues the case is distinguishable. We agree. Among other reasons, there is no evidence whatsoever the City regards the gas station matter as only theoretically closed but in actual truth only in remission, with the intent of re-approving the project if Safeway changes its mind. Furthermore, this case involves provisional relief that the trial court found had the effect of a permanent injunction; that was not true in *Canyon Crest*. And there is a factual record here of documented threats to human health posed by the proposed gas station that, although contested, the trial court could impliedly find the lawsuit prevented from materializing. None of that record material has been discussed or acknowledged.

41

For the first time in their reply brief, they elaborate in much greater depth on this issue, citing additional cases and also making a new factual argument about the state of the evidence. We decline to consider those new arguments and authorities. " 'It is elementary that points raised for the first time in a reply brief are not considered by the court.' " (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 548; accord, *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 157-158 (*United Grand Corp.*); see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 & fn. 10 [more fully developed argument in reply brief disregarded]; accord, *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070-1071 [same].)

### 3. *Appellants Have Forfeited Their Challenge to the Trial Court's Finding That the Litigation Conferred a Significant Benefit to the Public or Large Class of Persons.*

The City and Safeway argue the lawsuit also did not confer "a significant benefit, whether pecuniary or nonpecuniary, . . . on the general public or a large class of persons" (§ 1021.5). The reason, they argue, is because "[t]here was no evidence that abandonment of the project . . . conferred a significant benefit on anyone—other than, possibly, the existing local gas station competitors." This argument is too undeveloped for us to consider it. It contains no legal analysis, once again is not tailored to our abuse of discretion standard of review and is conclusory.

In assessing whether litigation confers a "significant benefit" on "the general public or a large class persons" (§ 1021.5), " '[t]he benefit may be conceptual or doctrinal and need not be actual or concrete; further, the effectuation of a statutory or constitutional purpose may be sufficient.' [Citation.] Thus, successful CEQA actions often lead to fee awards under

42

section 1021.5." (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 781.)  Furthermore, "The extent of the public benefit need not be great to justify an attorney fee award.  (See, e.g., *Protect Our Water v. County of Merced*[, *supra*,] 130 Cal.App.4th [at p.] 496 [significant public benefit where litigation prompted agency to improve methods of creating and managing its CEQA records].)  The trial court determines 'the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case.' (*Woodland Hills, supra,* 23 Cal.3d at pp. 939-940.)" (*Ibid.*)

Here, the trial court found that Save Petaluma's success "benefited the public at large by asserting important public rights," including "not only ensuring compliance with CEQA but asserting that an agency must not preemptively decide to approve a project simply because the proponent threatens to sue if the agency does not approve the project."  It found that "[b]oth of these issues raise broad general concerns over democracy and informed self-government.  In this, the court is again mindful that both the public and public participation hold a 'privileged position' in the CEQA process based on fundamental 'notions of democratic decision-making.' *Concerned Citizens of Costa Mesa, Inc. v. 32nd District Agricultural Association* (1986) 42 Cal.3d 929, 936.  As stated in *Laurel Heights Improvement Association v. Regents of the University of California*[, *supra*,] 47 Cal.3d [at p.] 392, '[t]he EIR process protects not only the environment but also informed self-government.' "

Appellants articulate no argument that the trial court abused its discretion in concluding the litigation sufficiently benefited the general public to qualify for a fee award.  They do not discuss or apply the applicable legal

43

standard.  They do not even address the trial court's ruling.  (Cf. *Artus*, *supra*, 76 Cal.App.5th 1043, 1059 [argument as to whether party prevailed for purposes of attorney fee award "is unpersuasive, as it utterly fails to come to grips with [trial judge's] detailed analysis"].)  For these reasons, Save Petaluma, in addition to addressing the merits of this issue, argues they have forfeited this claim of error.  We agree.  Indeed, the reply brief is practically silent on this issue:  it devotes just a single conclusory paragraph to this element that is devoid of any legal analysis and addresses none of Save Petaluma's arguments—not even the forfeiture point.  Given the conclusory and undeveloped state of appellants' briefing on this issue, we decline to consider it.  (See *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 153 [appellate court disregards conclusory arguments not supported by argument and legal authority or that " 'fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt' "]; see also *id.* at pp. 156-157.)

4. ***The Trial Court's Finding That the Necessity for and Burden of the Litigation Merited a Fee Award Was Supported by Substantial Evidence.***

The City and Safeway next argue Save Petaluma failed to prove that "the necessity and financial burden" of litigation justified an award of fees (§ 1021.5).  Again, we are not persuaded.

This element " ' "really examines two issues:  whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys.' " ' (*Whitley, supra,* 50 Cal.4th 1206, 1214.)  The City and Safeway do not argue

44

the "necessity" prong was not met.[11]  (See *id*. at pp. 1214-1215 [explaining "necessity" standard].)  They focus solely on the "financial burden" prong, which requires courts to weigh the costs and financial benefits of the litigation.  (See *id*. at pp. 1215-1216.)  A litigant cannot recover fees under section 1021.5 when their expected financial gains from the litigation offset their litigation costs.  (See *Whitley,* at p. 1211.)  But when the cost of litigation is " 'out of proportion' " to the plaintiff's individual financial stake in the case, an award of fees is appropriate.  (*Id*. at p. 1215; see also *id*. at p. 1223.)

In arguing the financial burden prong was not met, the City and Safeway assert a series of undeveloped points that do not meaningfully discuss either the law or the record, and do not articulate any claim of error in terms of any standard of review.  They assert:  (1) there was "no evidence, and barely any argument . . . addressing the anticipated or potential <u>benefits</u> of the litigation"—without explaining what kind of evidence was required, and making no effort to show they opposed the motion on the theory that such evidence was required (or, if not, to show that we can review the issue anyway)[12]; (2) the trial court "utterly failed to conduct the 'financial benefit

---

[11]  That requirement "has long been understood to mean simply that public enforcement is not available, or not sufficiently available" (*Whitley*, *supra*, 50 Cal.4th at p. 1217), such as where decisions by a public agency are themselves the subject of the lawsuit (see *id*. at p. 1215).

[12]  They did not oppose the attorney fee motion on this ground (at least, not in their written opposition papers) and we are under no obligation to ascertain whether the issue was preserved elsewhere in the record for our review or, alternatively, whether it needed to be.  As the appellants, the City and Safeway must affirmatively demonstrate that they preserved this argument in the trial court (including by citing to the record showing exactly where the issue was raised), or else explain why the issue can be raised for the first time on appeal.  When an appellant does neither, we may deem the

45

versus burden' weighing analysis required by [*Whitley*]"—without explaining what that standard entails, and citing no authority that the trial court was required to weigh anything explicitly in its written findings; (3) there was "substantial evidence indicating that [Save Petaluma's] litigation may have been funded, at least in large part, by economic competitors of Safeway" and that "[c]ourts have routinely *denied* fee motions in cases involving economic competitors" (italics added), citing four cases but analyzing none of them and making no argument the court *lacked discretion* to grant the motion in such circumstances; and (4) asserting that "the named members of [Save Petaluma]"—whom they do not identify—"expressed their private economic motives for litigation the action, including feared adverse impacts on their home values," accompanied by string citations to the record with no explanation or summary of the actual evidence, and asserting that "[f]ee motions brought by property owners with similar interests have repeatedly been *denied*" (italics added), again supported by a string citation to authority without analysis, and again articulating no legal argument that the court *lacked discretion* to grant the motion in such circumstances.

   None of these points are sufficiently developed for us to consider them. In addition to the reasons we have already noted, the trial court expressly addressed appellants' arguments about the supposed involvement of

---

issue forfeited.  (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 798-802; accord, *Colombo v. BRP US Inc.* (2014) 230 Cal.App.4th 1442, 1478.)  We do so here.  An appellate court "has no obligation to cull [a] lengthy record, ascertain the procedural context in which [the appellant] may have raised these claims in the trial court, determine whether and how [the opposing party] opposed the claims, determine whether [the appellant's] contentions were ever addressed . . ., and, thereafter, employ the proper standard of review in resolving such claims."  (*Dietz,* at p. 801.)

46

economic competitors and the plaintiffs' concerns for property value diminution, yet they do not say anything about those rulings. (See *Artus*, *supra*, 76 Cal.App.5th at p. 1059.) We will comment only on those two subjects, and only briefly.

Regarding economic competitors (i.e., other local gas station owners), the trial court found that "[i]t may well be that some support for the litigation came from a competitor," but concluded that "the mere involvement of possible competitors does not defeat the right to recover fees." It explained that "[w]here the private gains or goals *predominate*, those factors may naturally gravitate against an award under section 1021.5." (Italics added.) But it implicitly found such interests did *not* predominate here, noting that "here, [however], on its face, the litigation achieved important public benefits, and enforced broadly applicable important public rights, as explained above." The court also ruled, citing evidence, that Save Petaluma "demonstrate[d] that its 'fundraising was inadequate to cover . . . fees incurred following the December 3, 2018, hearing[13]—even at a reduced public interest rate—much less a subsequent lawsuit' " and that its counsel "stated that he undertook the litigation without receiving any fees or payment from the client or any third party and the firm [had] no expectation of receiving any payment except from the awards of fees and costs sought in this action." The court noted that the attorney "even attached the fee agreement as Ex. 1 to the reply declaration in support."

---

[13] This is a reference to the city council's initial decision to overturn the planning commission's approval of the project without an EIR before reversing itself and ultimately denying that administrative appeal in the final decision challenged here.

The City and Safeway do not discuss this ruling much less show that the court's factual findings are not supported by substantial evidence or that its legal conclusions are an abuse of discretion. They do not even summarize all material evidence bearing on this issue, including, as Save Petaluma points out, plaintiff's counsel sworn declaration under penalty of perjury refuting their speculation about third-party funding, which the trial court specifically relied upon. In their reply brief, they say that the attorney declaration is legally irrelevant because the issue is whether Save Petaluma itself, not its attorneys, received financial contributions from economic competitors. But they did not assert that point in their opening brief or in any way challenge the trial court's reliance on that evidence. So the contention is forfeited. (See *Herrera v. Doctors Medical Center of Modesto, supra,* 67 Cal.App.5th at p. 548; *United Grand Corp.*, *supra*, 36 Cal.App.5th at pp. 157-158.) In addition, they fail to explain the point with any reasoned legal argument and so it is forfeited for that additional reason.

The trial court also ruled that concern for local property values did not render Save Petaluma ineligible for a fee award, citing *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714 (*Keep Our Mountains Quiet*). It stated, "[n]othing indicates that this action only achieved protecting the property values of certain property owners and this issue *appears to be minimal and speculative.*" (Italics added.) Here again, the City and Safeway have made no attempt to show this finding is factually unsupported or legally an abuse of discretion. Moreover, the authority the trial court cited, *Keep Our Mountains Quiet,* fully supports its exercise of

48

discretion.[14] (See *Keep Our Mountains Quiet,* at pp. 739-740.) Appellants do not even mention, much less discuss, that case.

Finally, the City and Safeway also assert—without explanation or discussion and supported only by a string citation to two cases—that the trial court should have allowed them to conduct discovery into the possible involvement of economic competitors. This one-sentence contention is forfeited. It is conclusory and undeveloped, contains no citation to the record, and is not properly captioned under an argument heading as a distinct legal issue as it should be. (See *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 153; *Tsakopoulos Investments, LLC v. County of Sacramento* (2023) 95 Cal.App.5th 280, 309-310.)

### 5. *Catalyst Theory*

As we have noted, *Colusa, supra*, 145 Cal.App.4th 637 supports Save Petaluma's assertion that proof of the additional catalyst elements is unnecessary because this is not a catalyst case. Because appellants have not shown the court abused its discretion in deeming Save Petaluma a "successful party" under a non-catalyst theory, we need not resolve

---

[14] It affirmed an award of private attorney general fees to neighbors who filed a successful mandamus action challenging a local development project under CEQA. It held in relevant part the trial court did not abuse its discretion in concluding the financial burden criterion was satisfied *despite* evidence that some of the neighbors were concerned about a possible reduction in their property values. (*Keep Our Mountains Quiet, supra,* 236 Cal.App.4th at pp. 739-740.) Because, like here, the plaintiffs did not "enjoy[] any direct pecuniary benefit" from the ligation and the defendant submitted no evidence attempting to quantify any potential property value reductions, the amount of financial incentive was " 'indirect and largely speculative.' " (*Id.* at pp. 739, 740.)

appellant's contention that it did not establish the additional elements required by the catalyst theory.

But even if we reached appellants' argument that Save Petaluma did not meet the elements of the catalyst theory, we would reject it. For reasons we have already discussed, the trial court's determination that the suit was in effect a "*catalyst* motivating the defendants to provide the primary relief sought" (*Tipton-Whittingham*, *supra,* 34 Cal.4th 604, 608, italics added) by the petition—here, refraining from approving and constructing a project without CEQA compliance—and the "defendant[s] change[d] [their] behavior substantially because of, and in the manner sought by, the litigation" (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 521 (*Yucaipa*)) are supported by substantial evidence.

In catalyst cases, in addition to the elements specified by section 1021.5, to recover fees under section 1021.5, a fee claimant must show: "that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense," and "that the plaintiffs reasonably attempted to settle the litigation prior to filing suit." (*Tipton-Whittingham*, *supra,* 34 Cal.4th at p. 608.) Neither requirement is especially onerous.

The merits inquiry entails a determination "that the lawsuit is not 'frivolous, unreasonable or groundless.' " (*Graham*, *supra*, 34 Cal.4th 553, 575.) It is "not unlike the determination [a trial court] makes when asked to issue a preliminary injunction, i.e., . . . a determination at a minimum that ' "the questions of law or fact are grave and difficult." ' " (*Id.* at pp. 575-576.) Here, as we have already discussed and the trial court indicated, Save Petaluma prevailed on every pretrial motion, including defending against a demurrer and anti-SLAPP motion and obtaining a preliminary injunction

50

and stay. As we have said, the trial court could reasonably infer from "the timing and nature" of events that the City and Safeway were "acting under compulsion of the preliminary injunction" (see *Colusa*, *supra*, 145 Cal.App.4th at p. 651) rather than for some other reason when they allowed the project to languish without coming to fruition. In short, this case easily satisfies the merits requirement.

The settlement opportunity requirement does not require "[l]engthy prelitigation negotiations"; "nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time." (*Graham, supra,* 34 Cal.4th at p. 577.) "What constitutes a 'reasonable' time will depend on the context." (*Ibid*.) As examples of how the latter requirement may be met, the *Graham* court cited two cases. In one, plaintiffs' counsel sent a letter outlining plaintiffs' concerns about defendant's school for delinquent girls, it "appear[ed] that subsequent discussions and correspondence followed" but resulted in no change, and plaintiffs then filed their lawsuit. (See *S.D. v. Faulkner* (1989) 705 F.Supp. 1361, 1363, cited in *Graham*, at p. 577.) The other case is *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670 (*Garrison*), in which the Second District discussed section 21177, subdivision (b) of the Public Resources Code, which requires a person to object to the approval of a project orally or in writing "during the public comment period" or before "the close of the public hearing on the project" before he or she may pursue an action for violation of CEQA. (See *Garrison*, at p. 1676 and Pub. Resources Code, § 21177, subd. (b), cited in *Graham*, at p. 577.) *Garrison* explained that the statutory purpose of subdivision (b) "is to inform the decisionmaking body of the contentions of the interested parties

51

before litigation is instituted, so that it has the opportunity to address the contentions and hopefully render litigation unnecessary." (*Garrison*, at p. 1676.)  By citing *Garrison* and Public Resources Code section 21177 in *Graham*, our high court clearly indicated that a party's participation and airing of its grievances during the CEQA administrative process suffices to meet the judicially established requirement under section 1021.5 of "notify[ing] the defendant of its grievances and proposed remedies and giv[ing] the defendant the opportunity to meet its demands within a reasonable time" before filing litigation.  (*Graham,* at p. 577.)

Appellants argue that Save Petaluma was not even *formed* until after the City approved the gas station project.  But *Garrison* itself holds that is of no moment.  *Garrison* discussed and applied the rule that the CEQA exhaustion requirement is satisfied for an organization formed after the approval of a project as long as any member of the organization appeared individually at the administrative hearing and objected to the project on relevant grounds.  (See *Garrison*, *supra,* 36 Cal.App.4th at pp. 1676-1677 [where individual objected at agency hearing that EIR was required, "the requirements for exhaustion of administrative remedies were met here" for suit by later-formed organization].)  That principle, codified as an exception to the general exhaustion requirement (see Pub. Resources Code, § 21177, subd. (c)), "signifies that '[t]he purposes of CEQA . . . are not served by requiring proof in the record of compliance with the [exhaustion] requirement' " by an organization itself " '*when there is no real dispute that the requirement was in fact met.*' " (*Garrison,* at p. 1677.)

# III.

## *Amount of Attorney Fees*

The trial court awarded Save Petaluma $613,893.75 in attorney fees. In calculating this amount, it awarded the full amount of Save Petaluma's requested lodestar (but for a few hours claimed in connection with attending the hearing), applied a multiplier to a portion of the fees as requested, but denied Save Petaluma's request for a 2.0x multiplier and instead applied a lower multiplier of 1.5x. The City and Safeway now challenge the amount as excessive, once again on many grounds.

We review the amount of an attorney fee award for abuse of discretion. (*Howell v. State Dept. of State Hospitals* (2024) 107 Cal.App.5th 143, 157.) As this court has explained, "[t]he ' "only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." ' " (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1051.)

The amount of this award does neither, and extended discussion is unnecessary. The trial court explained its reasons in a detailed, four-page portion of its ruling, supported by extensive citation to caselaw and evidence. We affirm the award for the reasons stated succinctly by our Supreme Court: "In the present matter, the superior court based the award of attorney fees to the prevailing party, . . . , on the number of hours expended by counsel multiplied by the prevailing market rate for comparable legal services . . . where counsel is located. No error appears. The superior court used a proper standard in calculating the fees. [¶] There was also sufficient evidence to support the amount of the award; in addition to the detailed documentation submitted by [the prevailing party], the superior court was familiar with the

quality of the services performed and the amount of time devoted to the case.[15]  The award was not clearly wrong; the superior court did not abuse its discretion." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1096, fn. omitted.)

The City's and Safeway's many arguments challenging this award fail to take into account the court's stated reasons for the amount that it awarded.  Nor do they discuss the actual evidence.  Some claims of error are not supported by *any* citation to legal authority.  The City and Safeway attempt to shift their burden to demonstrate error by suggesting the trial court failed to cite any authority supporting the amount awarded.  (See *Denham v. Superior Court, supra*, 2 Cal.3d 557, 564; *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910; *Shiheiber v. JPMorgan Chase Bank, N.A.* (2022) 81 Cal.App.5th 688, 696.)

For example, they argue plaintiff's counsel unreasonably sought fees for excessive hours and challenge all of counsel's billings other than 52 hours of time entries that they say "directly relate" to obtaining the administrative stay.  "<u>No fee award was warranted or justified for the 750 plus hours spent on other tasks</u>," they assert, including for the administrative hearing, obtaining the administrative record and pursuing discovery.  They do not challenge any particular time entries as unreasonable or excessive; rather, they say that obtaining the stay was the "predicat[e]" of Save Petaluma's fee motion and therefore recoverable fees should be limited to fees directly incurred with that category of work.  The argument, for which they cite no

---

[15] In this case, the superior court's familiarity with the quality of legal representation was not as the trial judge who presided over the underlying litigation but as the judge who reviewed the extensive record of proceedings in ruling on the postjudgment motions regarding costs and attorney fees.

authority, is without merit. It has long been established that, "absent facts rendering the award unjust, parties who qualify for a fee should recover for *all* hours reasonably spent." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 632-633, italics added.) Indeed, under the private attorney general theory, even the fees incurred to prepare the fee motion itself are compensable. (*Id.* at pp. 623-624.) The trial court considered, and implicitly rejected, Safeway's argument that only fees incurred directly in connection with obtaining the stay are recoverable, which they also made in their trial court opposition papers. They have failed to show the court abused its discretion in doing so.

Also illustrative is their argument that the court erred in applying a multiplier to compensate for contingent risk. They assert this was error because there was evidence "suggesting" that plaintiff's counsel received third-party funding from outside sources "and thus did not take the case on a contingency." This argument fails at the threshold, because they do not argue there is *no* evidence supporting a contrary finding. (See *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173 [on substantial evidence review, appellate court "accept[s] all evidence that supports the judgment, [and] disregard[s] contrary evidence");*Yucaipa, supra,* 238 Cal.App.4th at p. 522 [appellate court must affirm trial court's factual determination "if there is evidence to support its finding, . . . even if other evidence would support a contrary finding"].)

It also distorts the record, badly. They do not discuss any of the evidence on this subject they say the trial court "dismissed" or explain what portion of fees the evidence supposedly shows was paid by third parties. Moreover, the evidence they do cite does not suggest that plaintiff's counsel did not face contingent risk in taking on this lawsuit (much less compel such a finding as a matter of law); at most it is evidence of some fundraising

efforts.[16] Without citing to specific portions of the record supporting their characterization of the evidence, they cannot carry their burden on appeal of demonstrating the existence of error. (See *Slone v. El Centro Regional Medical Center, supra,* 106 Cal.App.5th at p. 1172; accord, *Casey v. Hill* (2022) 79 Cal.App.5th 937, 975 ["[w]e reject this argument because it is made without any record support"].)

And, once again, the City and Safeway ignore vast swaths of the record, which contains ample substantial evidence that Save Petaluma's counsel had no expectation of receiving compensation for his efforts (i.e., faced risk). As we have noted, he stated under penalty of perjury that the fundraising was inadequate to cover his firm's fees incurred in the administrative proceedings, "even at a reduced public interest rate," "much less [in] a subsequent lawsuit." Save Petaluma's fee agreement reflects that, but for costs, its counsel took the judicial case on a pro bono basis with no expectation of payment other than the possible recovery of attorney fees. And its counsel confirmed under oath—twice—that nobody was paying his fees in the lawsuit.[17] Save Petaluma asserts in its brief that "some funding was

---

[16] Sandwiched within voluminous and largely irrelevant record citations, appellants cite evidence that local gas station owners were encouraged to, and possibly did, contribute anonymously to an opposition fundraising campaign. But no amounts are specified nor is there evidence of the use to which any such funds were put, apart from a single email speculating third-hand that some of the money was paid to "the Sacramento law firm cranking out as much paper as Safeway's lawyers."

[17] We quote what he said the second time on this subject:

"Paragraph 28 of my earlier declaration asserted, 'I agreed to represent Save Petaluma on a pro bono basis with the client being responsible only for litigation costs. *My firm has received no fees from the client, or any third party associated with the litigation*, and there has never been any understanding or expectation of receiving any fees from the client or any

obtained to support attorneys' fees incurred during the administrative proceedings", and we accept that concession. (See *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn. 4 ["Although briefs are outside the record, we may take the factual assertions in a party's appellate brief as admissions"].) But Save Petaluma did not seek a multiplier to compensate for contingent risk for the fees incurred in the administrative proceedings, nor did the court award a multiplier for that portion of the case. In short, the City's and Safeway's challenge to the use of a multiplier to compensate counsel for contingent risk has *no* support in the record.

We could go on to address all of the issues they raise concerning the amount of the award, but it would lengthen what is already a lengthy opinion. We have considered their remaining arguments and find them equally devoid of merit (and/or forfeited, insofar as there are several raised improperly for the first time in their reply brief).

### DISPOSITION

The judgment is affirmed. Respondent shall recover its costs.

---

third party.' Respondents suggest that my firm is receiving payment for our representation of Save Petaluma in the litigation from third parties 'not associated with the litigation.' I now clarify my testimony to confirm that *my firm has received no fees from Save Petaluma, its members or <u>any</u> third party for representing Save Petaluma in this litigation.* My firm also has no expectation of receiving any such fees for representing Save Petaluma in this litigation other than the private attorney general fees requested by this motion." (Italics added.)

STEWART, P. J.


We concur.


RICHMAN, J.


DESAUTELS, J.


*Save Petaluma v. City of Petaluma* (A169925)